UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>IESHA ARMSTRONG,<br><br>Defendant. | Criminal Action No. 09-cr-135 (BAH)<br><br>Chief Judge Beryl A. Howell |

**MEMORANDUM OPINION AND ORDER**

The defendant, Iesha Armstrong, who is incarcerated at the Bureau of Prisons ("BOP") medium-secure facility for women at Federal Correctional Institution Hazelton ("FCI-Hazelton"), located in the Northern District of West Virginia, submitted a handwritten letter seeking a reduction in her federal restitution payments during her lengthy incarceration. Def.'s Letter, received Oct. 4, 2018 ("Def.'s Mot."), at 1, ECF No. 74. According to the defendant, BOP has been steadily increasing the amount due on her monthly restitution payments to such an extent that she cannot afford to purchase even necessary hygiene articles from the facility's commissary. *Id*. at 1. She explains that her initial restitution payments of "$25 every three months" in March 2018, were increased to "$135 monthly" in July 2018, then to "$236 per month" in October 2018, *id*. at 1, and, more recently, to "$271.00" each month, Def.'s Letter, received Nov. 8, 2018 ("Def.'s Supp. Letter"), at 1, ECF No. 80, even though FCI-Hazelton provides no employment opportunities that could sustain such monthly payments. Def.'s Mot. at 1.

The defendant's first letter was initially construed as a "Motion to Require Government and Bureau of Prisons to Comply with Terms of Restitution Order." Minute Order (dated Oct. 5, 2018). The government urged that the letter "be construed as a petition for relief under 28 U.S.C. § 2241" because the defendant is "contesting her [Inmate Financial Responsibility

1

Program ("IFRP")] payment plan as determined by BOP," and, so construed, that the letter be dismissed or transferred to the district where she is serving her sentence. Gov't's Opp'n Def.'s Mot. ("Gov't's Opp'n") at 3-4, ECF No. 76; *see also* Gov't's Resp. to Order to Show Cause ("Gov't's Resp. OTSC") at 1, ECF No. 79 (reiterating position that defendant's letter should be construed as a § 2241 petition). Upon further review, the Court directed the government to show cause why the defendant's letter should not be construed as a "Motion to Adjust the Restitution Payment Schedule Pursuant to 18 U.S.C. § 3664(k)." Minute Order (dated Oct. 29, 2018). *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed[.]'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976))). In response to the show cause order, the government reported that, should the defendant's letter be construed as a motion pursuant to § 3664(k), the victim owed restitution in this case, Premier Bank Inc. (formerly Adams National Bank) would "not oppose a $50-per-month cap [on restitution payments] while defendant is in prison." Gov't's Resp. OTSC at 2. Notably, the government states that "because the representative of the victim of defendant's crimes does not oppose defendant's request, if defendant's letter is construed as a motion under § 3664(k), then the government also does not oppose an adjustment to the restitution order that requires defendant to pay restitution at a rate of no more than $50 per month during her term of incarceration." *Id*.

For the reasons stated below, the defendant's motion is construed as a Motion to Adjust the Restitution Payment Schedule, pursuant to 18 U.S.C. § 3664(k), and is granted.

## I. BACKGROUND

In 2010, on her guilty plea to armed bank robbery and unlawful possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), § 924(a)(22), and § 2113(a), (d), the defendant was sentenced by Judge Richard W. Roberts to serve a total of 84 months' imprisonment, 48 months

of supervised release, and to pay $8,350.00 in restitution. *See generally* Judgement ("2010 Judgment"), ECF No. 46.[1] The 2010 Judgment, on Form AO 245B, addresses payment of the restitution owed in two separate sections. First, in the "Schedule of Payments" portion of the 2010 Judgment, paragraph F is checked, indicating that "special instructions regarding the payment of criminal monetary penalties" apply and, in pertinent part, that "Defendant shall…pay restitution totaling $8,350.00 in D.C. case 1:09cr135," at the same time that the Court found the defendant does "not have the ability to pay a fine and, therefore," waived imposition of a fine. *Id.* at 6. Otherwise, this part of the 2010 Judgment provides no schedule for payment of the restitution during the defendant's incarceration, other than the following language on the printed Form AO 245B:

> Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

*Id.*

Second, in the portion of the 2010 Judgment setting out the "Special Conditions of Supervision," *id.* at 4, which pertain "[u]pon release from imprisonment," *id.* at 3, the defendant is directed for her "Restitution Obligation," to "pay the balance of any restitution owed at a rate of no less than $100 each month and [to] provide verification of payment to the Probation Office." *Id.* at 4.

The defendant was released from custody on January 12, 2015, and thereafter committed multiple violations of her supervised release, including *inter alia*, attempting to open new lines of credit, failing to report for random urinalysis testing, failing to make restitution payments,

---

[1] This case was reassigned to the undersigned on July 13, 2016, after the retirement of Judge Richard W. Roberts. Docket Entry, July 13, 2016.

failing to attend mental health sessions, and finally, for committing armed robbery in Maryland. Probation Petition, dated July 12, 2016, at 1-6, ECF No. 54 (noting violations 1-10 and that, at the start of supervision, the defendant had "agreed to submit restitution payments of not less than $100 per month beginning February 1, 2015."); Probation Petition, dated Sept. 7, 2016, at 2-4, ECF No. 58 (noting violations 11-22); Probation Petition, dated Nov. 3, 2016, at 2-3, ECF No. 60 (noting violations 23-24). Regarding the violations stemming from the Maryland offense conduct, the defendant was ultimately sentenced on her guilty plea in the District of Maryland, on February 9, 2018, to Armed Bank Robbery, in violation of 18 U.S.C. §§ 2113(a) and (d), and to Using, Carrying and Brandishing a Firearm During and In Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c), to consecutive terms of 84 months' incarceration on each count for a total of 168 months' imprisonment, with no restitution ordered. *See* Judgment on Revocation at 3, ECF No. 72; Probation Petition at 2, ECF No. 65; Judgment, *U.S. v. Armstrong*, No. 16-cr-00601-TDC, at 5 (D. Md. Feb. 9, 2018), ECF No. 48. For 23 violations of supervision, which the defendant conceded at a hearing on those violations, *see* Minute Entry (Sept. 7, 2018), she was sentenced in this Court to 18 months' incarceration, to be served concurrently with her current sentence, *see* Judgment on Revocation at 4.

When she arrived "at [the] Secure Female Facility-Hazelton on March 6, 2018," Def.'s Mot. at 1, the defendant apparently agreed to participate in the Inmate Financial Responsibility Program ("IFRP"), which has been described by the government as a "voluntary" program. Gov't's Opp'n at 2. The ramifications of non-participation in the IFRP are both severe and coercive, in order to "encourage[] each sentenced inmate to meet his or her legitimate financial obligations." 28 C.F.R. § 545.10. BOP regulations detail ten consequences that "shall result" should an inmate decline to participate in the IFRP, including, *inter alia*, being "quartered in the

lowest housing status," 28 C.F.R. § 545.11(d)(7); being ineligible for any community-based programs, *id.* § 545.11(d)(8); being ineligible for UNICOR, *id.* § 545.11(d)(5); being "subject to a monthly commissary spending limitation more stringent than the monthly commissary spending limitation set for all inmates," *id.* § 545.11(d)(6); being ineligible for any furlough, *id.* § 545.11(d)(2); and not being assigned any work outside the secure perimeter of the facility, *id.* § 545.11(d)(4). The same consequences are visited upon inmates who participate in the IFRP but then fail "to comply with the provisions of [their] financial plan," *id.* § 545.11(d), that is, to pay the amounts set by BOP.

According to the defendant, she was advised that her restitution payments for her conviction arising from her original case in this Court "would be $25 every three months beginning in June 2018," but "[a]fter the first payment in June, the counselor informed [her] that beginning in July," her restitution payments would increase to $135 monthly due to deposits made to her account by her family to help her pay "for commissary purchases." Def.'s Mot. at 1. She "made three payments [from] July through September," but, in September, the defendant was informed that the restitution payments would again be increased "beginning in October," to "$236 per month because [her] family has increased the amount that they send to [her] account." *Id.* The defendant explains that her family increased the amount sent to her to cover the restitution payments and ensure she would "still be able to purchase hygiene, food and other necessary items from [the] commissary." *Id.* The defendant avers that "there are no jobs that pay over $30 per month" at FCI-Hazelton, and that she is "dependent on the income that [she] receive[s] from [her] family and [she] cannot continue to afford increases" in restitution payments due each month. *Id.* As the defendant points out, when she was on supervision "and was employed, [she] was only obligated to pay $100 per month," but asks: "Now that I am

5

incarcerated, unemployed, and dependent on outside sources for money, how am I expected to pay over $200 per month?" *Id.* at 1-2.

The defendant initially requested that her restitution payments be capped at $50 per month until she is "released and [] able to earn [her] own income and make payments accordingly." *Id*. at 2. Subsequently, however, in a supplemental handwritten letter, the defendant reported that she was advised by personnel at FCI-Hazeleton that this court "has no authority over the BOP to determine the amount of [her] FRP and that [this Court] can only authorize that [her] FRP are stopped until [she is] released." Def.'s Supp. Letter at 1. Thus, she modified her request such that "if [the Court] cannot rule that [her] FRP is reduced to $50 quarterly," she asked that her "FRP is stopped until [she is] released and can find employment so that [she] can be responsible for [her] own payments," *id*., despite the adverse ramifications to her of not participating in the IFRP.

## II. DISCUSSION

Without disputing any factual assertions in the defendant's letter, the government characterizes the defendant's request as "contesting her IFRP payment plan as determined by BOP," Gov't's Opp'n at 3, and argues that, as a legal matter, the motion should "be construed as a petition for relief under 28 U.S.C. § 2241," *id.*, which "must be filed in the district of confinement and must designate the custodian of the facility at which the petitioner is held as the respondent," *id.* at 4. Consequently, in the government's view, jurisdiction is lacking and the defendant's motion, construed as a § 2241 petition, must either be dismissed or transferred to the district where the defendant is incarcerated. *Id.* The Court disagrees with the government's construction of the defendant's request, which is instead construed as a motion for adjustment of the restitution payment obligation, pursuant to 18 U.S.C. § 3664(k).

6

### A. Adjustment of Restitution Payment Obligation Is Authorized Under 18 U.S.C. § 3664(k)

The premise of the government's request to either dismiss or transfer the defendant's letter request is that she is merely "contesting her IFRP payment plan as determined by BOP," Gov't's Opp'n at 3, but this is incorrect. While the actions taken by BOP in confiscating funds contributed by the defendant's family to apply to her increasing restitution payments due under her IFRP plan may have prompted the defendant to seek relief from this Court, the relief she seeks is not directed at the conditions of confinement imposed by BOP, which would appropriately be addressed in a petition under 28 U.S.C. § 2241.

Instead, the defendant is seeking modification of the original restitution payment order by imposing a payment schedule during her term of imprisonment, given that the 2010 Judgment made the payment of restitution due during imprisonment without specifying any payment schedule. In other words, the relief sought is focused on the lack of a restitution payment schedule in the 2010 Judgment during a period of incarceration. As such, the defendant is seeking relief that is authorized under 18 U.S.C. § 3664(k), which provides for "adjust[ments]" of a restitution payment schedule on "the motion of any party . . . as the interests of justice require." *See, e.g., United States v. Bikundi,* No. 14-cr-00030 (BAH), 2017 U.S. Dist. LEXIS 222083, at *10-11 (D.D.C. June 28, 2017) (finding that defendant's motion for reduction in the amount of restitution she must pay each month during incarceration was "expressly contemplated by § 3664(k)…without requiring a petition under § 2241"); *United States v. Locke*, No. 09-cr-259, 2012 WL 1154084, at *3 n.5 (D.D.C. Apr. 9, 2012) (addressing defendant's motion to modify a restitution order under 18 U.S.C. § 3664(k) and concluding that if the prisoner were to "challenge[] her participation in the IFRP, or the payments she must make through that

program," the "proper method for raising such a claim is through a petition brought under 28 U.S.C. § 2241, filed in the district where a defendant's sentence is being served"); *United States v. Niski*, No. 2:15-cr-00115-JDL-1, 2018 WL 4997639, at *1 (D. Me. Oct. 15, 2018) (same); *United States v. Diggs*, 578 F.3d 318, 319–320 (5th Cir. 2009) (acknowledging that if the defendant were "challenging a court-ordered repayment schedule … suit could be brought under § 3664(k)," not 28 U.S.C. § 2241). Motions seeking adjustments of a restitution payment obligation are appropriately considered by the Court that originally entered the judgment since that jurisdiction has more familiarity with the underlying facts in the case as well as viable ties to any victim to whom restitution is owed.

In arguing that the defendant's letter must be construed as a petition for habeas relief under 28 U.S.C. § 2241, the government relies principally on three cases, *McGee v. Martinez*, 627 F.3d 933, 937 (3d Cir. 2010), *United States v. Small*, 13 F. Supp. 3d 24, 28 (D.D.C. 2014), and *United States v. Locke*, No. 09-cr-259, 2012 WL 1154084 (D.D.C. Apr. 9, 2012), but these cases are not binding on this Court and are, at any rate, inapposite. For example, in *McGee v. Martinez*, contrary to the judgment requiring payment of a $10,000 fine "to be made from prison earnings at a rate of $20.00 per month," *McGee*, 627 F.3d at 934, BOP proposed repayment at a different rate of $75 per quarter through the defendant's participation in the IFRP. When the defendant refused BOP's proposed repayment schedule, BOP placed him on "IFRP refusal status," *id.* at 935, and limited his commissary spending to $25 per month, which the defendant contested as hindering "his ability to pursue his original habeas action," *id.* On the "sole issue," *id.* at 934, before the court of whether the defendant "may maintain [his] suit as a habeas action under 28 U.S.C. § 2241, or whether he must re-file it as a civil rights action under [*Bivens*]," *id.*, the Third Circuit concluded that the defendant may challenge BOP's non-compliance with the

terms of a restitution order, pursuant to 28 U.S.C. § 2241. *Id.* at 937. Importantly, this case presented no claim for modification of an original restitution order, under 18 U.S.C. § 3664(k), since the claim instead sought relief from BOP's non-compliance with the court's judgment of $20 per month—relief that the district court granted on remand. *See McGee v. Martinez*, No. 3:CV-08-1663, 2011 WL 5599338, at *4 (M.D. Pa. Nov. 17, 2011) (finding BOP in violation of judgment terms and ordering "the BOP to recalculate McGee's IFRP payment contract in complete accordance with the directives of the sentencing court").

*Small* is similarly unhelpful to the government's position. There, the court granted the defendant's motion to amend her restitution order "to reflect the fact that participation in the IFRP is voluntary," *Small*, 13 F. Supp. 3d at 27, but denied her the requested reduction in her restitution payment obligation under 18 U.S.C. § 3664(k) because she "has not alleged a 'material change' in her economic circumstances that justifies" such a reduction, *id*. at 28. Thus, contrary to the government's view that 28 U.S.C. § 2241 cabins the court's authority to adjust court-ordered restitution payment obligations, the *Small* court expressly recognized the authority to do so under 18 U.S.C. § 3664(k), but simply found the defendant had failed to justify any adjustment.

Finally, the government relies on *Locke* for the proposition that the court lacks jurisdiction to hear challenges to the IFRP, "or the payments [the prisoner] must make through that program," Gov't's Opp'n at 4 (citing *Locke*, 2012 WL 1154084, at *3 n.5). To the contrary, the *Locke* Court unambiguously explained that "[t]he Court's decision [] does not preclude [the prisoner] from making a future request for modification under § 3664(k), provided that she can sufficiently demonstrate a viable reason for the modification." *Locke*, 2012 WL 1154084, at *2.

9

Thus, *Locke* expressly counters the government's position that the defendant may only seek relief from a restitution order by bringing a challenge under 28 U.S.C. § 2241.

In sum, the defendant's letter may be properly construed as seeking adjustment of her restitution payment obligation, under 18 U.S.C. § 3664(k), rather than a petition for relief under 28 U.S.C. § 2241.

### B.     Adjustment of Restitution Order During Incarceration is Warranted

In evaluating the defendant's requested relief for imposition of a restitution payment schedule during her period of incarceration, the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A, 3664, which applies here, provides guidance. The MVRA provides that a restitution order "shall require" the defendant either to return stolen property or reimburse the victim for his or her "loss," 18 U.S.C. § 3663A(b)(1), and requires courts to issue "restitution to each victim in the full amount of each victim's losses," *id.* § 3664(f)(1)(A). The court is directed to specify in the restitution order "the manner in which, and the schedule according to which, the restitution is to be paid," *id.* § 3664(f)(2), taking into consideration "(A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled; (B) projected earnings and other income of the defendant; and (C) any financial obligations of the defendant; including obligations to dependents." *Id.* The court may order "a single, lump-sum payment," "partial payments at specified intervals," "in-kind payments," "a combination of payments at specified intervals and in-kind payments," or even "nominal periodic payments." *Id.* § 3664(f)(3)(A)-(B). Although the MVRA restricts discretion in setting the amount of restitution, the statute expressly authorizes discretion in "fashioning" how a defendant is required to pay that amount. *See Paroline v. United States*, 572 U.S. 434, 462 (2014) ("District courts routinely exercise wide discretion both in sentencing as a general matter and more specifically in fashioning restitution orders.").

The MVRA also expressly anticipates the possibility that the court may "correct[,]" "amend[,]" "modif[y,]" or "adjust[]" restitution, notwithstanding the fact that an order of restitution is a final judgment. 18 U.S.C. § 3664(o)(1)(A)-(D). Thus, the Court is authorized, "on its own motion, or the motion of any party, including the victim," to "adjust the payment schedule, or require immediate payment in full, as the interests of justice require," when notified "of a material change in the defendant's economic circumstances." *Id.* § 3664(k).[2]

The D.C. Circuit has not addressed the precise contours of what constitutes a "material change" in a defendant's "economic circumstances," within the meaning of § 3664(k), though the Second Circuit has described this standard as "an objective comparison of a defendant's financial condition before and after a sentence is imposed." *United States v. Grant*, 235 F.3d 95, 100 (2d Cir. 2000) (finding material change in economic circumstances standard satisfied where a prisoner's bank account was unfrozen after sentencing). *See also United States v. Caudle*, 710 F. App'x 124, 125-26 (4th Cir. 2018) (applying *Grant*'s articulation of a "before and after" comparison); *United States v. Simpson-El*, 856 F.3d 1295, 1300 (10th Cir. 2017) (same); *United States v. Franklin*, 595 F. App'x 267, 272-73 (5th Cir. 2014) (same); *United States v. Dye*, 48 F. App'x 218, 220 (8th Cir. 2002) (same). The Eleventh Circuit, by comparison, has described the statute's requirement as "a *bona fide* change in the defendant's financial condition, either positive or negative." *Cani v. United States*, 331 F.3d 1210, 1215 (11th Cir. 2003) (finding petitioner's motion for modification inadequate because supported only by documentation of restitution payments made, not by a change in petitioner's financial circumstances). *See also*

---

[2] In contrast, BOP is provided with no discretionary authority over changing an inmate's court-ordered restitution repayment schedule, further undermining the government's position that a defendant's repayment schedule during incarceration is "under the exclusive control and authority of the Executive Branch," Gov't's Opp'n at 2-3 (quoting *U.S. v. Small*, 13 F. Supp. 3d 24, 28 (D.D.C. 2014)). As already concluded, *supra* in Part II.A., the MVRA provides a clear statutory basis to provide the relief the defendant requests, without requiring a petition under § 2241 to modify the IFRP.

11

*United States v. Grigsby*, 579 F. App'x 680, 684 (10th Cir. 2014) (articulating *Cani*'s standard of a "*bona fide* change" in "either positive or negative" direction).

The defendant's 2010 Judgment imposed no restitution repayment schedule on the defendant during her period of incarceration, and simply indicated that such payments would be "due during imprisonment." 2010 Judgment at 6. At the same time, the Court imposed a restitution repayment schedule for when the defendant was released from prison by setting a floor—but no ceiling—of "no less than $100 each month" as a special condition of supervision. *Id*. at 4. The defendant now asks the Court to modify the 2010 Judgment by creating a restitution repayment schedule during her incarceration of either $50 per month, *see* Def.'s Mot., which is at least half of the monthly restitution payment required upon her release when she has more opportunities for remunerative employment, or $50 per quarter, *see* Def.'s Supp. Letter.

The defendant sets out in her letters, and the full record in this case shows, how the defendant's economic circumstances have changed since the original restitution order was issued in this case. The sentencing judge contemplated an 84-month period of incarceration, whereas today the defendant is serving an *additional* 168-month prison term.[3] In short, the sentencing judge could not have known that the petitioner would ultimately be imprisoned for approximately three times as long as the original sentence imposed, and moreover, in a facility where "there are no jobs that pay over $30 per month." Def.'s Mot. at 1. "While [she] was out on probation and was employed, [she] was only obligated to pay $100 per month," *id*., but now that she is incarcerated in a facility with "no jobs that pay over $30 per month," she contends that she cannot reasonably be expected to make restitution payments "over $200 per month." *Id.* at 2.

---

[3] *See generally* Judgment, *U.S. v. Armstrong*, No. 16-cr-00601-TDC (D. Md. Feb. 9, 2018), ECF No. 48; Judgment on Revocation as to Iesha Nicole Armstrong, ECF No. 72.

12

Absent a restitution payment schedule that would delimit BOP's confiscation of funds contributed by the defendant's family for application to her restitution obligation, the defendant is unable to purchase "hygiene, food and other necessary items from [the] commissary." *Id*. at 1. While the defendant does not provide details about the hygiene or other commissary items she may need, BOP has historically failed to provide female inmates with the full range of feminine hygiene products necessary for care of menstruation periods, such as tampons, sanitary pads and liners.[4]  These factual circumstances indicate a material change in her economic circumstances at least from the time of her supervised release through the time of her present incarceration, in that she no longer has opportunities for employment.  The Court concludes that the defendant has sufficiently demonstrated "a material change in [her] economic circumstances," pursuant to 18 U.S.C. § 3664(k), for entitlement to modification of the terms of her restitution repayment obligation during her incarceration.

The defendant's restitution obligation is only one component of the IFRP payment amount imposed by BOP.  Indeed, the IFRP payment plan ordinarily includes not only any court-ordered restitution, but also the defendant's obligations to pay any special assessments imposed under 18 U.S.C. § 3013, fines and court costs, state or local court obligations and other federal government obligations.  *See* 28 C.F.R. § 545.11(a)(1)-(5).  The defendant has not provided—and appears not to know—how BOP computed the defendant's current IFRP payment of $271.00

---

[4] In August 2018, BOP indicated that "[w]ardens will ensure inmates are provided … at no cost to the inmates … [t]ampons, regular and super size; [m]axi [p]ads with wings, regular and super size; and [p]anty liners, regular." FEDERAL BUREAU OF PRISONS, U.S. DEP'T OF JUSTICE, OPERATIONS MEMORANDUM 003-2018, PROVISION OF FEMININE HYGIENE PRODUCTS (Aug. 1, 2018); *see also* FEDERAL BUREAU OF PRISONS, U.S. DEP'T OF JUSTICE, OPERATIONS MEMORANDUM 001-2017, PROVISION OF FEMININE HYGIENE PRODUCTS (Aug. 1, 2017).  Nonetheless, the Office of the Inspector General ("OIG") found that while "[a]ll of the institutions [OIG] visited provided sanitary pads free of charge," only "a few also provided tampons."  OFFICE OF INSPECTOR GEN., U.S. DEP'T OF JUSTICE, REVIEW OF THE FEDERAL BUREAU OF PRISONS' MANAGEMENT OF ITS FEMALE INMATE POPULATION 29 (Sept. 2018). OIG expressed "concern[] that BOP still lacks a method to ensure sufficient access" to feminine hygiene products. *Id.* at 31.

monthly and the government sheds no light on how much of this monthly payment amount is attributable to the defendant's restitution obligation. Considering the defendant's current circumstances and the adverse repercussions that may be triggered by the defendant's failure to participate in the IFRP or "to comply with the provisions of [her] financial plan," 28 C.F.R. § 545.11(d), the defendant's restitution obligation during her period of incarceration will be reduced to $50 per quarter.[5]

### III. CONCLUSION

Accordingly, it is **ORDERED** that the defendant's restitution payments shall be limited to $50 per quarter during her term of incarceration; and it is further

**ORDERED** that the government shall inform the Federal Bureau of Prisons that the defendant's restitution payments shall be limited to $50 per quarter; and it is further

**ORDERED** that the government shall notify the Court of any circumstances causing the defendant's total payment amount due under the Inmate Financial Responsibility Program to exceed $50 per quarter, in order that the Court may consider whether further adjustments to the defendant's restitution payment schedule would be in the interest of justice.

**SO ORDERED.**

Date: November 13, 2018

_____
BERYL A. HOWELL
Chief Judge

---

[5] Although the government confirmed with the victim owed restitution, Premier Bank Inc., that the victim has no objection to imposing a restitution repayment schedule during incarceration of $50 per month, Gov't's Resp. OTSC at 1, the relevant statute requires only that the Attorney General "certify to the court that the victim or victims owed restitution by the defendant *have been notified of the change in circumstances*," and that "[u]pon receipt of the notification, the court may…adjust the payment schedule, or require immediate payment in full, as the interests of justice require." 18 U.S.C. § 3664(k) (emphasis added). In short, mere notification and certification of that notification—not affirmative consent by the victim—is necessary for any adjustment to the restitution payment due.