**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Criminal Action No. 09-cr-135 (BAH) |
| IESHA ARMSTRONG, | Chief Judge Beryl A. Howell |
| Defendant. | |

## MEMORANDUM OPINION

The defendant, Iesha Armstrong, is incarcerated at Federal Medical Center Carswell ("FMC Carswell"), a Bureau of Prisons ("BOP") facility in Fort Worth, Texas. Pending is a motion by the government for an order authorizing the BOP to turn over "to the Clerk of this Court a reasonable portion of the funds" in the defendant's Inmate Trust Account, which contains over $4,000, "toward satisfaction of the remaining criminal restitution obligation in this case," which is about $6,000. United States' Motion for Order Authorizing Restitution Payment from Inmate Trust Account ("Gov't's Mot.") at 1, ECF No. 84.

In 2018, the defendant's restitution payments were limited to $50 per quarter during her term of incarceration. *See United States v. Armstrong*, No. 09-cr-135 (BAH), 2018 WL 5923913, at *7 (D.D.C. Nov. 13, 2018). This adjustment was made to the defendant's restitution order under 18 U.S.C. § 3664(k) after the defendant submitted a handwritten letter seeking a reduction in her restitution payments because BOP had gradually increased the amount withdrawn from her Inmate Trust Account from $25 quarterly in March 2018 to $271 per month by November of that year. *See* Def.'s Letter, received Oct. 4, 2018 ("Def.'s Letter I"), ECF No. 74.; *see also* Def.'s Letter, received Nov. 8, 2018 ("Def.'s Letter II") at 1, ECF No. 80.

On August 13, 2019, ten months after her restitution payments were capped at $50 per quarter, the defendant submitted another letter stating that "[t]he BOP . . . has frozen my

1

account" and requesting access to "my entire $4,300" along with an order "that my $50 quarterly . . . payment schedule" should "remain the same." Def.'s Letter, received Aug. 13, 2019 ("Def.'s Letter III"), ECF No. 82. The government subsequently filed the pending motion.

For the reasons that follow, the defendant's restitution payment schedule shall be adjusted to require a payment of $4,000 to satisfy part of her outstanding restitution obligation. BOP is authorized to turn over to the Clerk of this Court that $4,000 sum from the defendant's Inmate Trust Account. The defendant's restitution payments shall otherwise continue to be limited to $50 per quarter during her term of incarceration.

I.      BACKGROUND

On a guilty plea to armed bank robbery and unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(1), § 924(a)(22), and § 2113(a), (d), the defendant was sentenced by Judge Richard W. Roberts in 2010 to serve 84 months' imprisonment and 48 months' supervised release and to pay $8,350.00 in restitution. *See* Judgment ("2010 Judgment") at 2, 6, ECF No. 46.[1] After the defendant was released from custody in 2015, she violated her supervised release, including by committing armed robbery in Maryland. *See* Probation Petition, dated July 12, 2016, at 1-6, ECF No. 54 (noting violations 1–10 and that, at the start of supervision, the defendant had "agreed to submit restitution payments of not less than $100 per month beginning February 1, 2015."); Probation Petition, dated Sept. 7, 2016, at 2–4, ECF No. 58 (noting violations 11–22); Probation Petition, dated Nov. 3, 2016, at 2–3, ECF No. 60 (noting violations 23–24).

On her guilty plea in the District of Maryland to armed bank robbery, *see* 18 U.S.C. § 2113(a), (d), and to using a firearm during a crime of violence, *see* 18 U.S.C. § 924(c), the

---

[1]     This case was reassigned to the undersigned on July 13, 2016, after the retirement of Judge Richard W. Roberts. Docket Entry (July 13, 2016).

defendant was sentenced on February 9, 2018 to a total of 168 months', or 14 years', imprisonment; no restitution was ordered. *See* Judgment on Revocation at 3, ECF No. 72; Probation Petition at 2, ECF No. 65; Judgment, *United States v. Armstrong*, No. 16-cr-00601-TDC, at 5 (D. Md. Feb. 9, 2018), ECF No. 48. For twenty-three violations of supervision, which the defendant conceded at a hearing on those violations, *see* Minute Entry (Sept. 7, 2018), she was sentenced in this Court to 18 months' incarceration, to be served concurrently with her sentence on the guilty plea in the District of Maryland, *see* Judgment on Revocation at 4.

As already described, the defendant submitted a handwritten letter in October 2018 explaining that BOP had gradually increased the amount withdrawn from her Inmate Trust Account through the Inmate Financial Responsibility Program ("IFRP") and requesting that her quarterly restitution payments be limited to $50. *See* Def.'s Letter I.[2] The government and the victim's representative did not oppose the requested $50 cap. *See* United States' Response to the Court's Oct. 29, 2018 Show Cause Order ("Gov't's Resp. I") at 2, ECF No. 79. Construing that letter as a motion to adjust her restitution payment schedule under 18 U.S.C. § 3664(k), the Court concluded that the defendant's reincarceration for the extended term of 168 months amounted to a "material change in her economic circumstances" entitling her to an adjustment in her restitution payment schedule under that provision. *Armstrong*, 2018 WL 5923913, at *6 (quoting 18 U.S.C. § 3664(k)).[3] In a November 2018 Memorandum Opinion and Order, defendant's

---

[2] Although an IFRP payment plan encompasses not only any court-ordered restitution but also any special assessments, *see* 18 U.S.C. § 3013, fines and court costs, state or local court obligations, and other federal government obligations, *see* 28 C.F.R. § 545.11(a)(1)–(5), the parties did not identify in 2018 what portion of the money withdrawn through the IFRP was attributable to her restitution. *Armstrong*, 2018 WL 5923913, at *8.

[3] The 2010 Judgment provided no individualized schedule for payment of the restitution during the defendant's incarceration. 2010 Judgment at 6. Pre-printed language on the Judgment, Form AO 245B, stated:

> Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made

3

restitution payments were thus limited to $50 per quarter during her current term of incarceration. *Id.* at *7; *see also* Memorandum Opinion and Order (Nov. 13, 2018), ECF No. 81.

Defendant's August 2019 letter stated that "[t]he BOP . . . ha[d] frozen" her "account," prompting her to request access to the "entire $4,300" in the account as well as an order that BOP adhere to the previous restitution order. Def.'s Letter III. In the letter, the defendant also stated that her "independent financial situation ha[d] not changed" since the entry of the November 2018 order. *Id.* "I am still dependent on my family for any substantial money that is placed on my account," and "[m]y mother, who is the primary person sending me money[,] is 70 years old and lives on retirement income," the letter explained. *Id.*

In response to an order to show cause "how such BOP action complies with the restitution order in effect in this case," Minute Order (Aug. 13, 2019), the government confirmed that BOP had frozen defendant's account "pursuant to regulations related to the inmate trust account and a request of the U.S. Attorney's Office," Response to Court's Aug. 13, 2019 Minute Order ("Gov't's Resp. II") at 1, ECF No. 85.

Simultaneous with this response, the government filed the pending motion seeking authorization for BOP to transfer a lump sum, up to $6,048, from the defendant's Inmate Trust Account to the Clerk of this Court toward satisfaction of the remaining restitution obligation on the 2010 judgment. *See* Gov't's Mot. at 1. Defendant, represented by counsel appointed by the Court, opposed the motion, *see* Def.'s Opp'n to United States' Mot. for Order Authorizing Restitution Payment from Inmate Trust Account ("Def.'s Opp'n"), ECF No. 90, and the

---

through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

*Id*. The judgment further directed the defendant, during her period of supervision, to "pay the balance of any restitution owed at a rate of no less than $100 each month and [to] provide verification of payment to the Probation Office." *Id.* at 4.

government submitted a reply and supplemental memorandum in support of its motion, *see* Gov't's Reply and Supplemental Mem. Supp. Mot. for Order Authorizing Restitution Payment from Inmate Trust Account at 2 ("Gov't's Reply"), ECF No. 92.[4]

## II.  DISCUSSION

The government raises four legal theories in support of its motion. The first two theories — that the government can secure the defendant's total outstanding restitution obligation by enforcing a statutory judgment lien on the defendant's Inmate Trust Account or by using a common law right of offset, *see* Gov't's Mot. at 7–8, 11–12 — conflict with the restitution order in this case and misunderstand the respective powers of the courts and the executive branch in ordering and administering restitution. The government's third and fourth legal theories derive from the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A, which was codified "in scattered sections of 18 U.S.C.," *United States v. Hunter*, 786 F.3d 1006, 1008 (D.C. Cir. 2015), and, pursuant to § 3663A(d), MVRA restitution orders "are issued and enforced in accordance with section 3664," of the earlier enacted Victim and Witness Protection Act ("VWPA"). Under § 3664(n), the government claims, the deposits into the defendant's account qualify as "substantial resources" received "during a period of incarceration" that the defendant "shall be required to apply the value of . . . to any restitution . . . still owed." 18 U.S.C. § 3664(n); *see also* Gov't's Mot. at 8–9. Finally, the government invokes § 3664(k) to ask for an adjustment in the payment schedule based on a "material change in the defendant's economic circumstances." 18 U.S.C. § 3664(k); *see* Gov't's Mot. at 10–11. Section 3664(n)'s mandate does not apply here and, aside from authorizing the $4,000 payment, the Court declines to adjust

---

[4]     The outstanding service of appointed counsel for the defendant in this matter is greatly appreciated by the Court.

the payment schedule already set.[5] The government's "Smorgasbord of options," Gov't's Reply at 2, is addressed following a brief review of the MVRA.

### A.   The MVRA

The MVRA "govern[s] federal court orders requiring defendants convicted of certain crimes to pay their victims restitution." *Lagos v. United States*, 138 S. Ct. 1684, 1687 (2018); *see also* 18 U.S.C. § 3663(a)(1) (providing that a "court shall order" restitution in certain cases). Section 3664 of the MVRA lays out the "[p]rocedure for issuance and enforcement of [an] order of restitution." 18 U.S.C. § 3664. Under that provision, "[u]pon determination of the amount of restitution owed to each victim, the court shall . . . specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid, in consideration of" multiple factors, including the defendant's "financial resources" and "projected earnings." *Id.* § 3664(f)(2). A court has considerable discretion to structure the restitution order's schedule into "payments at specified intervals" or a "single, lump sum payment." *Id.* § 3664(f)(3)(A).

"A sentence that imposes an order of restitution is a final judgment notwithstanding the fact that . . . such sentence can subsequently be . . . corrected . . . appealed and modified . . . amended . . . [or] adjusted . . . ." *Id.* § 3664(o). Each of these processes contemplates court action. *See id.* (referencing FED. R. CRIM. P. 35, 18 U.S.C. § 3664(d)(5), among other provisions requiring judicial action). As is relevant here, § 3664(k) sets out a process for notification "of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution." *Id.* § 3664(k). "Upon receipt of the notification, the court may, on its

---

[5]   Although the government's motion requests relief contrary to the 2018 order, that motion is not construed as a motion to reconsider, which should be granted only "as justice requires." *United States v. Hassanshahi*, 145 F. Supp. 3d 75, 80 (D.D.C. 2015) ("Courts in this District have . . . entertained motions for reconsideration in criminal cases by importing the standards of review applicable in motions for reconsideration in civil cases."). The government's first two legal theories do not ask for reconsideration of the schedule of restitution payments previously ordered. The second two legal theories invoke statutory provisions that provide mechanisms for adjustment of prior restitution orders outside the framework of a motion for reconsideration.

own motion, or the motion of any party . . . adjust the payment schedule, or require immediate payment in full, as the interests of justice require." *Id.* Section 3664(n) further mandates that "[i]f a person obligated to provide restitution, or pay a fine, receives substantial resources from any source, including inheritance, settlement, or other judgment, during a period of incarceration, such person shall be required to apply the value of such resources to any restitution or fine still owed." *Id.* § 3664(n).

"Sections 3663 and 3664 of Title 18 clearly impose *on the court* the duty to fix the terms of restitution." *United States v. Johnson*, 48 F.3d 806, 808 (4th Cir. 1995); *see also United States v. Martinez*, 812 F.3d 1200, 1202 (10th Cir. 2015) ("By statute, it is the district court — not the government — that determines how a defendant is to pay restitution."); *United States v. Merric*, 166 F.3d 406, 409 (1st Cir. 1999) ("[I]t is the inherent responsibility of the judge to determine matters of punishment and this includes final authority over all payment matters."). "The government," on the other hand, "has statutory authority to enforce . . . the terms of a restitution order" set by the court. *Martinez*, 812 F.3d at 1207; *see also* 18 U.S.C. § 3664(m)(1)(A) ("An order of restitution may be enforced by the United States . . . .").[6]

---

[6] A majority of the courts of appeals have expressly held "that the district court may not delegate discretion to" set the terms of restitution payment to BOP or another executive agency. *United States v. Prouty*, 303 F.3d 1249, 1255 (11th Cir. 2002); *see also, e.g.*, *Ward v. Chavez*, 678 F.3d 1042, 1050 (9th Cir. 2012) ("If . . . the district court simply orders immediate repayment and leaves it to another agency, like the BOP, to actually set the payment schedule that the statute obligates the court to determine, that order is unlawful, as the district court has abdicated in its duty to set the schedule 'in consideration of' the financial circumstances of the defendant."); *United States v. Corley*, 500 F.3d 210, 225–27 (3d Cir. 2007), *vacated and remanded on other grounds*, 556 U.S. 303 (2009) (stating that delegations to the BOP to determine the schedule of restitution payments are improper"); *United States v. Davis*, 306 F.3d 398, 425–26 (6th Cir. 2002) (same); *United States v. McGlothlin*, 249 F.3d 783, 785 (8th Cir. 2001) (same); *Merric*, 166 F.3d at 409; *United States v. Kinlock*, 174 F.3d 297, 301 (2d Cir. 1999) (rejecting a restitution order that required immediate payment without any schedule); *Johnson*, 48 F.3d at 808 ("This statutory grant of authority to the court must be read as exclusive because the imposition of a sentence, including any terms for probation or supervised release, is a core judicial function."). *But see United States v. Sawyer*, 521 F.3d 792, 794–95 (7th Cir. 2008); *Kaemmerling v. Berkebile*, 359 Fed. App'x. 545, 546–47 (5th Cir. 2010) (per curiam). The D.C. Circuit has declined to address the issue of the permissibility of restitution orders that leave a prisoner's payments up to the IFRP on two occasions. *See United States v. Hunter*, 786 F.3d 1006, 1012 (D.C. Cir. 2015) (acknowledging these and similar cases and stating "[t]his circuit has not ruled on the permissibility of such orders, and we do not do so today. In *United States v. Baldwin*, 563 F.3d 490 (D.C. Cir. 2009), however, we determined that restitution arrangements like the one at issue here do not constitute plain error.").

7

### B. The Statutory Judgment Lien

The government's motion first invokes the statutory lien created for the United States on imposition of a sentence ordering restitution. *See* Gov't's Mot. at 7; *see also* 18 U.S.C. § 3613(c) ("[A]n order of restitution . . . is a lien in favor of the United States on all property and rights to property of the person fined."). The government claims that the notice lien it filed in the defendant's name for the enforcement of the restitution obligation in the 2010 Judgment "impacts the Defendant's Inmate Trust Account," Gov't's Reply at 2, such that the MVRA allows the government to garnish that property as part of its authority to "enforce this judgment lien 'by all available and reasonable means,'" *id.* at 3 (quoting 18 U.S.C. § 3664(m)(1)(A)).

Section 3664(m), the provision the government relies on, actually states that "*[a]n order of restitution* may be enforced by the United States . . . by all . . . available and reasonable means." *Id.* § 3664(m)(1)(A) (emphasis added). As the fuller text makes clear, § 3664(m) defines mechanisms for enforcement of a court's "order of restitution," circumscribing the government's authority to enforce its judgment lien to the terms of the restitution order. *See Martinez*, 812 F.3d at 1207 (stating, in rejecting the argument that the government may garnish more of the defendant's wages than the restitution order's payment schedule allowed, that "[t]he government has statutory authority to enforce only the terms of a restitution order, not to take an enforcement action that would exceed a restitution order's payment terms."); *see also id.* at 1202 ("The government can enforce a restitution order only in a manner that does not exceed the payment obligations set out in the restitution order."); *United States v. Hughes*, 914 F.3d 947, 949 (5th Cir. 2019) ("When a restitution order specifies an installment plan, unless there is language directing that the funds are also immediately due, the government cannot attempt to enforce the judgment beyond its plain terms absent a modification of the restitution order or default on the payment plan."); *cf. United States v. Bikundi*, No. 14-CR-00030 (BAH), 2017 WL

10439588, at *7 n.8 (D.D.C. June 28, 2017) ("BOP is bound by the court-ordered restitution payment schedule and may not seek an amount greater than ordered."). Indeed, the government's reply brief seems to concede that § 3664(m) merely addresses "collection mechanisms." Gov't's Reply at 3 (quoting *United States v. Gallion*, 504 F. App'x 373, 376 (6th Cir. 2012)). That the government may not enforce a restitution obligation beyond the terms of payment set in the restitution order follows not just from the text of § 3664(m) but also from the principle that a court may not delegate its authority to set the terms of restitution to executive branch agencies. *See supra* note 4.

The judgment lien and § 3664(m), then, cannot support the government's request for a lump sum payment beyond the $50 owed per quarter under the governing restitution order.

### C. Common Law Offset

The government's next theory — that common law offset "permit[s] BOP to seize monies from the Defendant's Inmate Trust Account to pay her restitution obligation," Gov't's Mot. at 12 — is similarly flawed. The common law right of offset "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A." *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18 (1995) (internal quotation marks omitted). Here, the government says, "[t]he Defendant owes the United States restitution, and the United States owes Defendant money from her Inmate Trust Account. The most expedient approach would allow the United States to credit the Defendant for her restitution payment, which the United States could remove from her inmate account." Gov't's Mot. at 12.

Setting aside the serious question whether common law right of offset would apply to restitution debts or to funds held in an Inmate Trust Account, common law offset, like

9

enforcement of the statutory lien, is a mechanism of collection.[7] Again, the government seems to acknowledge this in its reply, stating "the MVRA would contemplate such an uncomplicated approach to *collection*" as common law offset. Gov't's Reply at 11 (emphasis added). As already explained, the government's authority to collect on the restitution order is limited by the order's payment terms. Under those terms, payment of the full outstanding amount of restitution is not due and the government cannot use common law offset to collect the lump sum the government requests.

### D. Section § 3664(n)

Next, the government argues that under 18 U.S.C. § 3664(n), "the Defendant's resources received from any source during her term of incarceration must be applied to her outstanding restitution obligation." Gov't's Mot. at 8.[8] That statutory provision, however, does not mandate adjustment of the restitution order to provide for the lump sum payment the government requests.

The defendant and the government agree that the government's ability to use § 3664(n) to garnish or otherwise seize funds depends on the terms of the restitution order. *See* Def.'s Opp'n at 5; Gov't's Reply at 7. Where a restitution order requires immediate payment of the full sum

---

[7] As the defendant observes, "the Government's position . . . that [an] inmate's Inmate Trust Account is ripe to be seized and applied to outstanding restitution obligations" given the government's common law right of offset is in conflict with "the special role that the MVRA assigns to the courts in determining restitution orders." Def.'s Opp'n at 8. Further, the government has not offered any precedent for the application of common law offset to restitution obligations. *See* Gov't's Mot. at 11–12 (citing cases); Def.'s Opp'n at 8–9 (reviewing these cases and observing that none involve restitution); Gov't's Reply at 11 (citing to a case about a garnishment procedure and stating "[t]he garnishment procedure in [the case] is little different than the offset approach advanced by the United States here").

[8] 18 U.S.C. § 3664(n) states, in full:

> If a person obligated to provide restitution, or pay a fine, receives substantial resources from any source, including inheritance, settlement, or other judgment, during a period of incarceration, such person shall be required to apply the value of such resources to any restitution or fine still owed.

owed or sets out a flexible payment plan, § 3664(n) may apply to allow the government to garnish the defendant's "substantial resources." *See United States v. Williams*, 898 F.3d 1052, 1055 (10th Cir. 2018) (stating this in a discussion of garnishment generally and not § 3664(n) in particular); *United States v. Poff*, 781 F. App'x 593, 594 (9th Cir. 2019) (upholding a district court's order allowing the government to seize funds under § 3664(n) to the extent those funds were disability benefits where the restitution order provided for immediate payment, *see United States v. Poff*, No. CR09-0160JLR, 2016 WL 3079001, at *1 (W.D. Wash. June 1, 2016)); *United States v. Lemberger*, 673 F. App'x 579, 580 (7th Cir. 2017) (relying on § 3664(n) to compel payments where payment of restitution was ordered immediately); *United States v. Cunningham*, 866 F. Supp. 2d 1050 (S.D. Iowa 2012) (allowing full amount of defendant's disability payments to be garnished where lump sum payment of restitution was required); *United States v. Brewer*, No. 96-CR-294-K (02), 2016 WL 6652996, at *4, 1 (N.D. Tex. Oct. 21, 2016), report and recommendation adopted, No. 3:96-CR-294-K (02), 2016 WL 6650948 (N.D. Tex. Nov. 10, 2016) (granting a motion under § 3664(n) to allow seizure of inheritance placed in Inmate Trust Account where restitution order required payments of "at least $150" monthly); *United States v. Smalls*, No. 196CR00075MRDLH1, 2016 WL 6582473, at *1 (W.D.N.C. Nov. 4, 2016) (authorizing garnishment of inmate trust account under § 3664(n) of "current balance owed for criminal restitution"). Garnishment is "improper," however, "where the government is seeking payment of an amount that is not currently due" under the restitution order. *Williams*, 898 F.3d at 1055 (discussing *Martinez*, 812 F.3d at 1201). Applying that distinction here, § 3664(n) does not require authorization of a lump payment, as the restitution order limits payments to $50 per quarter during the defendant's term of incarceration.

The government's contrary arguments misconstrue the restitution order and the record in this case. First, the government argues in its reply brief that the relevant restitution order is the 2010 Judgment, interpreting that judgment to make "the full amount of restitution . . . due" now. Gov't's Reply at 7. The restitution ordered in that 2010 Judgment was "adjusted under section 3664(k)" by the November 2018 order, 18 U.S.C. § 3664(o) (allowing a "final judgment" ordering restitution to be "adjusted under section 3664(k)"), so the latter order governs.[9] The November 2018 order does not make the full amount of restitution due now; rather, that order clearly limits the defendant's payments to $50 quarterly. The language the government cites from *Williams* — that garnishment is allowed where "the judgment specifies that the amount owed is due in full on the date of judgment, regardless of whether the judgment includes a back-up schedule of payments," Gov't's Reply at 7 (quoting *Williams*, 898 F.3d at 1055) — is inapposite because the governing restitution order does not establish a mere "back-up schedule;" it imposes a limitation on payments, *see Williams*, 898 F.3d at 1053 (stating that the relevant restitution order required "[l]ump sum payment . . . immediately" but provided that "[i]f restitution is not paid immediately, the defendant shall make payments" on a prescribed schedule).

Second, the government argues that "Defendant Armstrong's history of default . . . should nullify even the schedule of payments ordered by this Court." Gov't's Reply at 7. By statute, "[a] . . . payment of restitution is in default if a payment is delinquent for more than 90 days. Notwithstanding any installment schedule, when a fine or payment of restitution is in

---

[9] The government argues that "the Court's fashioning a payment schedule during the Defendant's imprisonment does not alter the enforceability of the restitution order created under § 3664(f)(1)(A)[ in 2010,] . . . the mutability of which is controlled by § 3664(o). Thus, . . . the payment schedule did not fully control the Defendant's duty to pay restitution . . ." Gov't's Reply at 8. Section 3664(o), however, provides that a "a final judgment" ordering restitution can be altered under § 3664(k), and the 2010 Judgment was altered by the payment schedule ordered under § 3664(k) in November 2018.

default, the entire amount of the fine or restitution is due within 30 days after notification of the default . . . ." 18 U.S.C. § 3572(i). The government claims that the defendant defaulted when she "fail[ed] to pay any part of the original restitution between September 2016 and August 2018" and because she has made "no payment since June 6, 2019." Gov't's Mot. at 9. The defendant represents that, for almost the entire period between September 2016 and August 2018, she was in county jail and was unable to make restitution payments. Further, once the defendant arrived at a BOP facility in March 2018, she began making restitution payments through the IFRP — those payments were the subject of her 2018 letters and of the November 2018 order. In any event, any failure to make restitution payments in the period prior to entry of the November 2018 restitution order is now irrelevant. Finally, the government's claim that the defendant has made no payment since June 6, 2019 is disingenuous: the government acknowledged on August 19, 2019 that "BOP encumbered or froze the funds in the Defendant's trust account" in anticipation of this litigation. Gov't's Resp. II at 1. "Because of the encumbrance on the trust account, the Defendant's IFRP payments are being stayed pending resolution of the litigation by the Court," the government continued. *Id.*[10] The government cannot use its control over inmate funds to force default and make the entire amount of restitution due.

In sum, § 3664(n)'s mandate does not apply here because of the terms of the restitution order.[11]

---

[10] The defendant states that a $50 restitution payment was withdrawn from her account in September 2019 despite this representation by the government. *See* Def.'s Opp'n at 7.
[11] Consequently, the question whether the payments the defendant's elderly mother and other relatives have been making into her inmate account constitute "substantial resources," as that term is used in § 3664(n), need not be resolved. *See, e.g.*, *Hughes*, 914 F.3d at 951 (holding that the provision "refers to windfalls or sudden financial injections" and "unanticipated resources that become 'suddenly available'" (quoting *United States v. Scales*, 639 F. App'x 233, 239 (5th Cir. 2016)).

E.  Section § 3664(k)

Finally, the government invokes § 3664(k), which provides a process for notification "of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution." 18 U.S.C. § 3664(k).[12] "Upon receipt of the notification, the court may, on its own motion, or the motion of any party . . . adjust the payment schedule, or require immediate payment in full, as the interests of justice require." *Id.* The government's motion asserts the following material change in the defendant's circumstances: "The United States Attorney's Office for this district recently received information from BOP that the Defendant currently maintains substantial funds in her Inmate Trust Account at FMC Carswell. Specifically, deposits made to Defendant's Inmate Trust Account between June 2018 and December 2018 averaged $771.67 monthly, for a total in deposits of $4,630.00." Gov't's Mot. at 5.

Although the defendant acknowledged in her October 2018 letter that she was receiving money from her family, she stated her "family ha[d] increased the amount that they send to my account . . . to cover my [restitution] and still be able to purchase hygiene, food and other necessary items from [the] commissary." *Id.* at 1.  The defendant's representations were not contested by the government, *see* Gov't's Reply at 10; Gov't's Resp. I at 2, and the November 2018 order relied on these representations that the defendant's Inmate Trust Account contained subsistence-level funds.[13]  Given her incarceration "in a facility with 'no jobs that pay over $30 per month,'" the Court found that "[a]bsent a restitution payment schedule that would delimit

---

[12]  More fully, the statute requires the Attorney General to "certify to the court that the victim or victims owed restitution by the defendant have been notified of the change in circumstances." 18 U.S.C. § 3664(k).  The government complied with that requirement in this case by serving a copy of its motion on the victim and stating that service of the motion constituted the required notice. *See* Gov't's Mot. at 14 & n.5.

[13]  The government explains that BOP only recently alerted the United States Attorney's Office "that the Defendant currently maintains substantial funds in her Inmate Trust Account at FMC Carswell." Gov't's Mot. at 4; Gov't's Reply at 10.

14

BOP's confiscation of funds contributed by the defendant's family for application to her restitution obligation, the defendant is unable to purchase" necessities, "entitl[ing] her to modification of the terms of her restitution payment obligation during her incarceration." *Armstrong*, 2018 WL 5923913, at *7.

Now, in her August 2019 letter, the defendant states that there is "a little over $4,100.00 in my pre-release savings account and about $175 in my commissary account," for a total of about "$4,300." Def.'s Letter III. This substantial accumulation of deposits constitutes a "material change in the defendant's economic circumstances" since November 2018. 18 U.S.C. § 3664(k); *see also Armstrong*, 2018 WL 5923913, at *6 (reviewing circuit courts' definitions of this phrase as "an objective comparison of a defendant's financial condition before and after a sentence is imposed," *United States v. Grant*, 235 F.3d 95, 100 (2d Cir. 2000), and "a *bona fide* change in the defendant's financial condition, either positive or negative," *Cani v. United States*, 331 F.3d 1210, 1215 (11th Cir. 2003)); *United States v. Roush*, 452 F. Supp. 2d 676, 681 (N.D. Tex. 2006) ("Discovery of previously unknown or hidden assets would also constitute a change in the defendant's economic circumstances that could justify modification under section 3664(k), as it would be a change in the economic circumstances presented to the court.")). Given this "material change," § 3664(k) allows the Court to "adjust the payment schedule, or require immediate payment in full, as the interests of justice require." 18 U.S.C. § 3664(k).

The defendant says that she is saving the money in her account "to give [her]self the best possible advantage upon [her] release," Def.'s Letter III, and "to afford restitution payments and necessities in the later part of her sentence," Def.'s Opp'n at 3, "in the event that anything occurs where my family is not able to send me money," Def.'s Letter III. The defendant's mother, the "primary person sending [her] money," is "70 years old and lives on retirement income." *Id.* By

15

this logic, the defendant would be excused from satisfying her restitution obligation more promptly than required by a court-ordered schedule, no matter how substantial her accumulated funds grew, due to the risk that her family contributions might end and she might not achieve her goal of saving sufficient funds to ease her reentry to the community following incarceration. The problem with this logic is that it would subvert the purpose of mandatory restitution "to 'make victims of crime whole' by 'fully compensat[ing]' them for their losses." *In re Sealed Case*, 702 F.3d 59, 67 (D.C. Cir. 2012) (alteration in original) (quoting *United States v. Frazier*, 651 F.3d 899, 904 (8th Cir. 2011)). Meanwhile, the defendant's letter does not acknowledge the importance of her obligation to pay restitution, mentioning that obligation only in passing. Def.'s Letter III.

A sum of a few hundred dollars, plus any income the defendant may receive from employment while incarcerated and any deposits the defendant may receive from her family, is sufficient for daily maintenance and to satisfy the defendant's quarterly restitution obligations while incarcerated. The defendant's desire to save money for her release does not outweigh the interests of the victim, and the public, in prompt satisfaction of the defendant's outstanding restitution obligation. *Cf. United States v. Surber*, 94 Fed. App'x. 355, 356 (10th Cir. 2004) (holding that defendant's wish to save for his release was not a material change in economic circumstances justifying adjustment of his restitution order under 18 U.S.C. § 3664(k)).

The defendant is thus ordered to make a payment of $4,000 from her IFRP account toward her outstanding approximately $6,000 restitution obligation. Otherwise, the defendant's restitution payments shall continue to be capped at $50 per quarter during the term of her incarceration.

### III. CONCLUSION

For the reasons stated, the United States' Motion for Order Authorizing Restitution Payment from Inmate Trust Account is granted. BOP is authorized to turn over $4,000 from the defendant's Inmate Trust Account to the Clerk of this Court toward satisfaction of the defendant's outstanding restitution obligation in this case. The defendant's restitution payments shall otherwise continue to be capped at $50 per quarter during her term of incarceration.

An Order accompanies this Memorandum Opinion.

**SO ORDERED.**

Date: January 13, 2020

_____
BERYL A. HOWELL
Chief Judge